UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Angel Roldan**

    **v.**       Civil No. 13-cv-447-PB
Opinion No. 2014 DNH 158
**Edward Reilley, Warden,
Northern New Hampshire Correctional Facility**

**MEMORANDUM AND ORDER**

Angel Roldan is incarcerated pursuant to a final judgment of the New Hampshire state courts. After exhausting his avenues for relief in state court, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The state has moved for summary judgment. I grant the motion.

### I. BACKGROUND

On April 18, 2001, Roldan was arrested and later indicted in superior court on one count of being a drug enterprise leader and three separate counts of conspiracy to sell cocaine, crack cocaine, and ecstasy. New Hampshire v. Roldan, 151 N.H. 283, 284-85 (2004). A jury convicted him on all counts, and Roldan was sentenced to at least sixty-five years in state prison. Id.; Doc. No. 1. The New Hampshire Supreme Court affirmed Roldan's conviction on July 23, 2004. Roldan, 151 N.H. at 287.

On July 28, 2008, Roldan filed a pro se petition for a new trial.  Doc. No. 1-3.  The superior court denied the petition as untimely on February 4, 2009.  Doc. No. 1-4.  Roldan appealed that denial to the New Hampshire Supreme Court, which remanded to the superior court with instructions to treat the appeal as a petition for a writ of habeas corpus.  Doc. No. 7-2.  The superior court denied habeas relief on August 11, 2011.  Doc. No. 7-3.  On September 22, 2011, Roldan filed a notice of discretionary appeal with the New Hampshire Supreme Court.  Doc. No. 7-3.  The Supreme Court affirmed the superior court's denial of habeas relief on October 12, 2012.  Doc No. 7-5.

On October 8, 2013, Roldan filed a petition for a writ of habeas corpus in this court.  Doc. No. 1.  The state filed a motion to dismiss on February 6, 2014, arguing that Roldan's petition was untimely.  Doc. No. 6.  Roldan objected on February 19, 2014.  Doc. No. 10.  The state filed a motion for summary judgment incorporating its timeliness argument on February 24, 2014, Doc. No. 12, to which Roldan objected.  Doc. No. 15.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is

2

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is considered genuine if the evidence allows a reasonable jury to resolve the point in favor of the nonmoving party, and a fact is considered material if it "is one 'that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, I examine the evidence in the light most favorable to the nonmoving party. Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

    The party moving for summary judgment bears the initial burden of identifying the portions of the record it believes demonstrate an absence of disputed material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In determining what constitutes a material fact, "we safely can ignore 'conclusory allegations, improbable inferences, and unsupported speculation.'" Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

### III. ANALYSIS

The New Hampshire Supreme Court affirmed Roldan's conviction on direct appeal on July 23, 2004. Roldan, 151 N.H. at 287. The conviction became final on direct review ninety days later - on October 21, 2004 - when the time expired for Roldan to file a petition for a writ of certiorari in the U.S. Supreme Court. Doc. No. 1; see Gonzalez v. Thaler, 132 S. Ct. 641, 653-54, 656 (2012) (citing Sup. Ct. R. 13.1) (discussing the federal habeas limitations period calculation).

Consequently, the period for Roldan to timely file a federal habeas petition commenced on October 21, 2004 and expired one year later, on October 21, 2005.[1] See 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. . . . [running from] the date on which the judgment became final by the conclusion of

---

[1] Although "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward" the one-year limitations period, see 28 U.S.C. § 2244(d)(2), Roldan first sought collateral review in state court almost three years after the expiration of the one-year limitations period. Doc. No. 1-3; see Trapp v. Spencer, 479 F.3d 53, 58-59 (1st Cir. 2007) ("Section 2244(d)(2) only stops, but does not reset, the clock from ticking . . . [and] cannot revive a time period that has already expired." (alterations in original) (quoting Dunker v. Bissonnette, 154 F. Supp. 2d 95, 103 (D. Mass. 2001))).

direct review or the expiration of the time for seeking such review . . . .").  Roldan filed his petition in this court on October 8, 2013, almost eight years too late.

Roldan nevertheless seeks to have the limitations period equitably tolled because he is "a lay, first time, incarcerated offender, who did not sufficiently speak or understand English, and has extremely limited access to courts and to do research, which is always in [sic] written in English."  Doc. No. 1. Roldan has testified that Spanish is his native language and that,

> [w]hile I have never denied that I do speak some English, my understanding of others speaking English is limited.  I cannot read English at all. . . .  All of the law books in the prison where I am incarcerated are written in English.  Since I do not read English, I was unaware of the time limitations contained in the law . . . .

Doc. No. 14-1.  Roldan also claims that "ineffective assistance of [his] appellate counsel," Doc. No. 1, and his "lack of education or familiarity with the legal system," Doc. No. 1-4, prevented him from making a timely filing.

Roldan's defense counsel at trial, Richard Monteith, was deposed on December 3, 2010.  He engaged in the following exchange with Roldan's post-conviction counsel:

> Q:  Was there . . . a translator . . . . present throughout trial?

5

> [Monteith]: Yes, [there] was.
>
> Q: Did you use . . . [the] translator in your conversations with the defendant?
>
> [Monteith]: No. Angel Roldan could speak English fluently. To me it appeared that he understood everything that I said. He . . . asked me to ask the court to not have [the interpreter] interpret for him in Spanish because he was getting confused when . . . he would hear Spanish then English . . . his point was I can understand the English and don't need an interpreter to interpret. And I think on the record he indicated just that, he didn't want [the interpreter] to interpret for him.

Doc. No. 12-2. The trial transcript reflects the following exchange between Monteith, Roldan, and the judge on the first day of trial:

> MR. MONTEITH: . . . Judge, Mr. Roldan made reference to me and to [the interpreter] that he understands English perfectly well, except for a couple of little things here and there. [The interpreter] would[,] instead of simultaneously . . . interpreting[,] . . . just be here with . . . Mr. Roldan on things that he . . . may not understand.
>
> . . . .
>
> THE COURT: . . . [This] appears to be the way you'd like to proceed, right?
>
> MR. ROLDAN: Yes.
>
> THE COURT: Because I assume that it's not easy[,] . . . if you understand English, to pay attention to the witness, and at the same time listen to [the interpreter]?
>
> MR. ROLDAN: Yeah.

6

> THE COURT: But . . . if later on you decide you didn't understand some of this stuff[,] . . . it's just going to be too late to come back and say, "Golly, I should have had a simultaneous translation." Do you understand that?
>
> MR. ROLDAN: I do understand. . . . Thank you, your Honor.

Doc. No. 7-1. Neither party has noted any instance in which Roldan sought the interpreter's assistance at trial. Roldan recently testified that "[t]he reason I . . . chose not to completely rely upon the Spanish interpreter at trial, was because the interpreter . . . . was from a different country than the country where I was born, and I did not understand many of the things he said." Doc. No. 14-1. Roldan first expressed this concern in his opposition to the motion for summary judgment, nearly twelve years after the trial's conclusion. See Doc. No. 7-1.

A "habeas petitioner bears the burden of establishing the basis for equitable tolling," the application of which remains "the exception rather than the rule." Riva v. Ficco, 615 F.3d 35, 39 (1st Cir. 2010). To succeed, Roldan must present specific facts demonstrating that he (1) "was prevented from timely filing by extraordinary circumstances," and (2)

7

"exercised reasonable diligence in trying to preserve his rights."[2] Dominguez v. Duval, 527 F. App'x 38, 39-40 (1st Cir. 2013) (citing Holland v. Florida, 560 U.S. 631, 648-49 (2010)). Roldan has failed to meet his burden with respect to both prongs.

Neither the Supreme Court nor the First Circuit have dealt with the issue at any length, but the First Circuit has noted that a petitioner's lack of English proficiency may be relevant to the equitable tolling analysis.[3] See Ramos-Martínez v. United States, 638 F.3d 315, 324 (1st Cir. 2011) (with respect to both the "extraordinary circumstances" and "reasonable diligence" inquiries, a petitioner's "limited education and lack of

---

[2] Certain "illuminating considerations" may be "especially helpful in evaluating a petitioner's call for equity in a close case." Dominguez, 527 F. App'x at 40 (citing Trapp, 479 F.3d at 61) (referencing the petitioner's "diligence in exhausting state remedies"; the "absence of prejudice to the prosecution"; and the "apparent merit of the claim"). Because Roldan's case is not a close one, I need not consider the Trapp factors here.

[3] Given the lack of binding precedent, Roldan urges me to equate a petitioner's lack of English proficiency with mental illness, which the First Circuit has held "may prevent a habeas petitioner from understanding and acting upon his legal rights." See Riva, 615 F.3d at 40. I decline Roldan's invitation. Mental illness, if sufficiently severe, presents a far greater obstacle to a habeas petitioner than even a complete lack of English proficiency. It may prevent a prisoner from comprehending his or her rights under any circumstance, whereas an otherwise competent petitioner's lack of English proficiency stands as an obstacle only to the extent that the petitioner lacks sufficient outside assistance to make a timely filing.

familiarity with the English language," "standing alone, may be insufficient to excuse a failure to file a timely habeas petition," but a reviewing court may consider these factors in the "the totality of the circumstances"). A number of courts of appeals have held that a petitioner's limited English proficiency is an "extraordinary circumstance" for equitable tolling purposes only when the petitioner faced other obstacles related to his or her linguistic difficulties.[4] See, e.g., Yow Ming Yeh v. Martel, 751 F.3d 1075, 1078 (9th Cir. 2014) (petitioner must be "unable to procure legal materials in his own language or to obtain translation assistance"); Pabon v. Mahanoy, 654 F.3d 385, 400 (3d Cir. 2011) (petitioner must be "deni[ed] . . . access to translation or legal assistance"); Inglesias v. Davis, No. 07-1166, 2009 WL 87574, at *3 (6th Cir. Jan. 12, 2009) (language difficulties must have "prevented the petitioner from accessing the courts"); Diaz v. Kelly, 515 F.3d

---

[4] In contrast, other courts of appeals appear to have concluded that a petitioner's limited English proficiency is never an extraordinary circumstance. See Perez v. Florida, 519 F. App'x 995, 997 (11th Cir. 2013) (per curiam) ("An inability to understand English does not constitute extraordinary circumstances justifying equitable tolling."); Gutierrez-Ruiz v. Trani, 378 F. App'x 797, 799 (10th Cir. 2010) ("[A] petitioner's lack of proficiency in the English language, in conjunction with a lack of access to legal materials in his first language and a translator, are not extraordinary circumstances that warrant equitable tolling.").

9

149, 154 (2d Cir. 2008) (citing Mendoza with approval).  A petitioner with limited English proficiency must also demonstrate that he or she took specific steps to overcome these additional obstacles in order to satisfy the "reasonable diligence" requirement.  See, e.g., Diaz, 515 F.3d at 154 ("[T]he diligence requirement of equitable tolling imposes on the prisoner a substantial obligation to make all reasonable efforts to obtain assistance to mitigate his language deficiency.").

It is undisputed that English is not Roldan's native tongue.  I accept that Roldan prefers to communicate in Spanish.  But aside from (1) Roldan's own post-hoc assertions that he "did not sufficiently speak or understand English," and (2) the appointment of a trial interpreter (whom Roldan asked not to interpret because he understood English), there is no evidence supporting Roldan's claim that a lack of English proficiency caused him to miss the filing deadline.  Roldan contends that his "lack of English comprehension is amply demonstrated by the fact that all of his recorded telephone conversations played at his trial were entirely in Spanish."  Doc. No. 10.  These recordings may well prove Roldan's proficiency in Spanish, but they do not demonstrate a lack of proficiency in English.  The

trial transcript and the testimony of Roldan's defense counsel both strongly support the conclusion that Roldan can sufficiently speak and understand English. And although Roldan claims that he "cannot read English at all," Doc. No. 14-1, he has failed to explain how he managed to "file[] a pro se motion in the [New Hampshire] Supreme Court [seeking post-conviction relief] which was denied as being too late." Doc. No. 1-3; see, e.g., Torres v. Davis, 416 F. App'x 480, 482-83 (6th Cir. 2011) (petitioner's filing of pro se pleadings demonstrated that his claimed lack of English proficiency did not prevent the timely filing of a habeas petition); Yang v. Archuleta, 525 F.3d 925, 930 (10th Cir. 2008) (same); Astorga v. Terhune, 130 F. App'x 181, 183 (9th Cir. 2005) (same); United States v. Sosa, 364 F.3d 507, 513 (4th Cir. 2004) (same).

Roldan has failed to demonstrate that his claimed lack of English proficiency is an "extraordinary circumstance" that would justify equitable tolling of the limitations period. Moreover, he has pointed to no specific steps that he took during the limitations period – such as requesting that Spanish language legal materials be brought to the prison, petitioning for access to an interpreter, seeking out a bilingual inmate to provide assistance, or attempting to improve his own English

11

skills - that might constitute "reasonable diligence."  See, e.g., Pabon, 654 F.3d at 402; Ramos-Martínez, 638 F.3d at 324.

Roldan's other arguments - that he is entitled to equitable tolling based on his illiteracy, lack of education, lack of effective appellate counsel, lack of access to the courts, and status as a first time offender – are conclusory, have no significant evidentiary support, and lack merit.  See, e.g., Lawrence v. Florida, 549 U.S. 327, 336-37 (2007) ("Attorney [ineffectiveness] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."); Perez, 519 F. App'x at 997 ("[W]e have not accepted a lack of a legal education and related confusion or ignorance about the law as excuses . . . ."); Baker v. Cal. Dep't of Corr., 484 F. App'x 130, 131 (9th Cir. 2012) ("Low literacy levels, lack of legal knowledge, and need for some assistance to prepare a habeas petition are not extraordinary circumstances . . . ."); Rawlins v. Newton-Embry, 352 F. App'x 273, 275 (10th Cir. 2009) ("A prisoner's illiteracy is insufficient to toll the statute of limitations."); Inglesias, 2009 WL 87574, at *3 ("A 'poor education' likewise normally will not excuse a dilatory filing."); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999)

12

("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.  It is irrelevant whether the unfamiliarity is due to illiteracy or any other reason." (citation omitted)).

## IV.  CONCLUSION

For the reasons discussed above, I grant the motion for summary judgment.  Doc. No. 12.

SO ORDERED.

>  /s/Paul Barbadoro
>  Paul Barbadoro
>  United States District Judge

July 21, 2014

cc:  David J. Goldstein, Esq.
     Theodore M. Lothstein, Esq.
     Elizabeth C. Woodcock, Esq.